on the second third. All right, I have the four goal players here. Let me call the calendar. The first case is Adam McNeil v. Yale. He received a 28-day letter from the appellees this morning. David Tracy for the Plaintiff's Appellant. May it please the Court? With the Court's permission, I would like to request three minutes for rebuttal. Yes. Plaintiffs were denied equal access to housing based solely and explicitly on their gender. This case is about whether they have a remedy. There is no real dispute that defendant fraternities do not allow women as tenants and certainly not on an equal basis as men. These are fraternity houses. They are for the fraternity members who, according to fraternity policies, must be men. Membership is the metaphorical gate around a fraternity house. There is no dispute that defendant denied plaintiffs the opportunity to become fraternity members explicitly because of their gender. As a result of that gender-based denial, the plaintiffs could not compete for fraternity housing on an equal footing with men. But they never asked to live in the houses. Isn't that a sine qua non of a housing violation? Your Honor, the plaintiffs did everything that any man would do to live in a fraternity house. They applied for fraternity membership, and they did it in three consecutive years. We allege in the complaint that the plaintiffs were seeking to fully integrate these organizations, not to partially integrate them. Housing, as we allege, is central to the fraternity's purposes. You join a fraternity in part because you want to live in the fraternity house. It is patently obvious to anyone who applies for a fraternity that what they want is to live in the fraternity house. That's part and parcel to what it means to be a fraternity member. And so when they applied for membership in these three consecutive years, they were seeking the full benefits of being a fraternity member, not partial benefits, including housing. May I ask you about that? The complaint sues, I think, nine fraternities. Is that right? That's correct. And as I understand it from a note in your brief, a couple of them have been dropped, so we're down to seven? I think that's right, yes. The question is, looking at the brief, looking at the complaint, I couldn't find any allegation that specifically said, and I'm assuming each fraternity is entitled to be judged on its own terms and not based on the practices of others, that these frats each had residential housing. In other words, some frats in America obviously have housing, some don't. I couldn't find any allegation that, in fact, these have housing. And from a, at a minimum, a redressability perspective as to standing, don't you need an allegation that these fraternities, each fraternity actually has residential beds? Yes, Your Honor, and there is an allegation that each of these fraternities has residential housing. If you look in the named parties, we don't just bring claims against the fraternity, but we bring claims against the housing corporation for each of these fraternities. So the housing corporations for each of the fraternities that issue here are named as the defendants. Each of those housing corporations is wholly owned by the fraternity. And so there is a clear allegation that each of these fraternities do have housing. Sorry, I don't mean that they have a brick-and-mortar structure. I mean that they're the sort of fraternity that is more than a social gathering space, but actually a place where people are housed as in they sleep. I couldn't find any allegation that the nine fraternities each, in fact, is of a character that, in which people reside. Well, we allege for all of the fraternities that they, all of the fraternities that issue here give priority to fraternity members, i.e. to men, in renting residential units in their house. We allege for all of them that the house is central to their operation. We allege for all of them that they agreed that the units in their house would be made available to men, and that men would receive priority in renting units in their house. If we don't list it by fraternity, it's simply for economic reasons, because we allege that each of the fraternities has a house specifically for the purposes of housing its members. And we allege that in paragraph 158, we allege that they are central, and in 164, I believe, we allege that each of these was formed for the specific purpose of housing the fraternity members. What is the significance of the, I think you started to address this before, the relationship between the fraternities and the housing corporation? Like, is it the case, I think you said something to the effect of their, the housing corporations are fully owned by the fraternities? There's no separation as far as you see, or as far as you've pleaded? Well, as far as we've pleaded, they are fully, all the housing corporations are fully, wholly owned by the fraternities, and they were designed for the specific purpose of housing the members. There is one entity, or one individual, that one of the defendants took over the house from a corporation that was designed for the fraternity. We allege that this particular individual has a long-standing relationship with the fraternity. They conveyed the house to him for zero dollars, according to public records. And so this individual is holding it for the purposes of the fraternity and for the benefit of the fraternity. And who's the decision maker, though, in terms of housing? We allege that it is the local chapters in conjunction with the national organizations that are making decisions about who gets to live in the fraternity house. The local chapters are the ones who are involved in the selection process, but it's the national organizations who are demanding the local chapters discriminate. And we have specific allegations about this for one of the fraternities, Sigma Phi Epsilon. When they considered integrating their space, we allege that the national organizations threatened them with removing them from the house, with evicting them, essentially. That is because housing is central to the organization. That's also because the plaintiffs here were applying for housing, and everyone understood that. Are you arguing, counsel, that the fraternities cannot discriminate on the basis of sex? We are arguing that fraternities— Well, that's my question. Can they do that? Can they do it legally? Not if they have privately owned housing that is completely unconnected to any university and is using the private housing stock in the cities and caves. No, they are not— You mean they can't take housing and immunize it from the FHA by being in a fraternity? Is that what you're arguing? That the housing is subject to FHA violations? That's correct, Your Honor. And the fact that the owners of the housing are allowed to discriminate on the basis of sex should not be allowed? The FHA has a private club exemption, and if you are a private club that discriminates, you must meet all the elements of the exemption in order to be exempt from the FHA. And don't the fraternities meet all those elements of the— No. No, Your Honor. They do not. Not on the face of the complaint. This is an affirmative defense. And in order for dismissal to be appropriate on the basis of affirmative defense, all the elements must be affirmatively alleged on the face of the complaint. Which elements do they not meet? They don't meet any of the elements, Your Honor. For instance, we allege, as I noted, that the fraternity house is not incidental to the purpose of the fraternity. It is central to the purpose of the fraternity. That's why the national organization threatened to revoke the housing from the one local chapter that decided they wanted to integrate. We also allege that there's a commercial purpose here. The housing is central, as we allege, for generating dues, which is the lifeblood of the fraternity. It generates rent, which helps fund the fraternity. So they make money. They make money on the housing. That's what we allege, Your Honor. Yes. May I ask you, before you sit down, about the 3604C claim? Having read the complaint, I don't see any reference to that subsection, although I think A and B are referred to. What's the basis for treating that as a fairly pled claim? I appreciate you argued in the briefs, but the statute is not referred to either by citation or by language that tracks the substance of the statute. If you look at the content of the complaint, you'll see that we allege specific statements that indicate a preference for housing. I will note, Your Honor, that this 3604C issue was litigated actively in the lower court. Defendants never raised the issue that it was not pled in the complaint. That issue was waived. It was the first time they ever raised it. It was on appeal. If you look at docket 87 at page 9, docket 123 at 4 on the district court docket, you'll see we discussed it. And if you look at docket 97 and docket 125, you will see that defendants never raised the issue about it not being pled. And that all suggests that there's no prejudice here. The defendants were not prejudiced by the specific statute not being alleged in the complaint, which is what's at the heart of the notice-pleading statute. Mr. Tracy, your time has expired. You're reserved three minutes for rebuttal. Yes. We'll hear from the attorney. Thank you, Your Honor. Good morning, Your Honors. Joan Gilbride for the defendants, appellees, the fraternities here. And there are seven of them actively as part of the appeal. Your Honors, we're asking that the court affirm the ruling of the District Court of Connecticut. And that affirmance can be on one of three grounds. That the plaintiffs lack standing under Article III. That there's no injury within the zone of interest of the Fair Housing Act. And also the proximate cause argument. Before you move into the specifics, just as to the first, wouldn't it be incorrect for the dismissal to have been with prejudice if it's a 12B1 dismissal, no standing? Isn't it right that the plaintiffs get to try again? Your Honor, the District Court looked at that issue. There had been two prior amendments to the complaint. And the court felt that any potential amendment would be futile. But what's the legal authority that a dismissal for lack of subject matter jurisdiction, which is what standing is, is with prejudice? I've never seen that. I think, Your Honor, that the District Court looked at that issue very clearly, heard from all the parties, and felt that the dismissal should be with prejudice. And it was a 12B6 motion, Your Honor, that was made. Alternatively, we sought dismissal under 12B6 based upon the failure to allege an injury within the zone of interest. So I think that was the basis for the District Court's ruling on that. It looked to me that with the full range of rulings that the District Court had to make with so many other parties in play, many of them were 12B6 dismissals. But the one that's at issue here appears to be a square 12B1. Well, Your Honor, you're correct with respect to standing. But with respect to the other two arguments, the proximal cause argument, which we feel is just recently, if you look at the en banc ruling from the Ninth Circuit, I think it's very clear that the proximal cause issue here was a sound basis for dismissal by the District Court. And in addition to that, we don't believe that there's a sound argument that there's an injury within the zone of interest protected by the Fair Housing Act. But why is the denial of housing, that's what the claim is, that's the injury that was pled. How is that not within the zone of the statute? Well, Your Honor, I think if you review the complaints and all the pleadings below, this was clearly a case that was about alleged denial of membership in the fraternity, not denial of housing. The plaintiffs never even requested housing. They didn't apply. By the way, how would one do that? If someone did not want to be in a fraternity necessarily, but wanted to live in the fraternity house, how would they go about applying? Your Honor, the plaintiffs themselves admitted in their complaint that there were non-fraternity members living in the houses. So they would apply like any other person would apply for housing. And how is that? They would speak to the landlord, put in an application, and apply for housing. The plaintiffs, they admit in their complaint, paragraph 163 and 199, that the housing was available to non-members. In fact, they identify at least one fraternity that had non-members in their house. But why did the plaintiffs have to seek housing by that route? Why couldn't they seek it through the familiar two-step of applying for membership upon becoming a member, presumably being in a preferred position to get housing? Why did they have to do it your way? They didn't do it anyway. They applied for membership. They rushed. They didn't even complete the process of membership. So they did submit rush applications, but there's a whole process. And they were told no women need to apply. I mean, why isn't that tantamount to a denial of membership? There's a process, Your Honor. I agree. At least one fraternity did tell them that their bids would not be accepted. I think it's more than one. I think if you look at paragraphs 141 and 136, there are statements by the multiple frats basically saying no women. But, Your Honor, these individuals, I mean, I agree. If they had applied, they would likely not have been members. We're not disputing that. These are single-sex fraternities. They are. However, these plaintiffs never even tried to seek housing. You know, they're trying to basically take the denial of membership, which is sanctioned by Title IX, and turn that into a Fair Housing Act claim. When they haven't even applied for housing. So there's no basis under the Fair Housing Act for a claim when the causal chain is so long at so many steps. And I think a review of the Ninth Circuit decision will make that clear. How causal chain is it? It seems if you apply for membership and you get in, you can then apply for housing. It seems like more or less a two-step. Well, you have to apply for RUSH. You have to be accepted for a bid. You have to then become a member in the fraternity, and then you can apply for housing. But you don't even have to go through that process. You can simply apply for housing directly. And the plaintiffs here didn't even do that. They showed absolutely no interest in applying for housing. This was all about membership and integrating fraternities. I guess I'm not fully convinced that they haven't applied for housing. But going to what you were saying about the causal chain of events, it seems like most of the cases that address this that say that the steps are too removed are cases where there's an intermediary of some kind, that the banks deny loans, the immediate victims are the people who took the loans, and so it's too far to say then the city can recover. And so the injury is the part that's too removed. Here, there isn't someone in between the fraternities and the people who applied and were denied. It really doesn't have that kind of lengthy chain that the other sort of foreclosure-related cases do. Well, respectfully, Your Honor, I think there is a chain there. You have to first become a member, and then you have to apply for housing. You have to make the decision to apply for housing. But the plaintiffs admit that. It's not a chain of injury, I guess, is what I'm saying. And that seems to be what the cases are concerned about, that the injury is too removed because it's going from one person to another person. Here, there's no chain of injury because the people who are seeking housing are the ones who are saying they're injured. There's no automatic assumption that just becoming a member in a fraternity guarantees you housing. It doesn't work like that. You still have to apply for housing. And I think it's admitted by the plaintiffs that there are nonmembers that are part of the housing, and not every fraternity member has housing. Is there anything where these plaintiffs could have pled as to the denial of housing via the membership route? I think it doesn't matter what they pled because they didn't actually take the steps that they needed to take. So it's not a matter of pleading, Your Honor.  So they can't plead that because it didn't happen. But is there something about the membership process that requires an expressed interest in housing before one actually clears the bar and becomes a member? That seems to be your premise, but that seems out of thin air. I think our premise is that they never took any steps, separate or apart, from fraternity membership to show any interest in this housing. They could have applied as any person could have applied for this housing, and there's no allegation that what would have happened. In other words, you know, first of all, they allege, counsel said today that these houses are owned by the fraternities. That's not pled as a complaint. They plead substantial control in a very conclusory fashion, Your Honor. So our argument is that they never even took any steps whatsoever to show any interest in housing. They were focused upon membership, and even there they did not complete the process. To the question I asked your adversary, are you contending that the complaint fails to allege that each fraternity in fact has housing available to members? Well, it's definitely not alleged in the complaint. That is not alleged, Your Honor, is absolutely correct. There's no group pleading. There's no separate allegation of each individual fraternity. The only separate allegation is in paragraph 163. But that's not an argument you at any point made below. It doesn't appear that you at any point have said there's a failing of standing here because you have only generally pled that fraternities have residential housing. Am I correct that's not a point you have thus far pursued? You're right. You're correct, Your Honor, that we did not make that allegation or argument below with the district court. Our argument was strictly that they did not apply for housing, didn't show any interest in housing, and there was no injury in fact. They didn't show an injury within the zone of interest, and that there was no proximate cause. May I ask if you could just speak outside the record, fully understanding the... I'm trying to understand just for context. Do these fraternities all have residential housing? Actually, I'm not certain of the answer to that, Your Honor, to be completely candid. Thank you, counsel. Thank you. Mr. Troci, you're reserved three minutes for rebuttal. Mr. Troci, is it true that not one of the plaintiffs, or the two named plaintiffs or anyone else, asked to live in any of these fraternity houses? They asked to live in the fraternity houses in the same way that men asked to live in the fraternity houses. No, but we've heard here, and I think you agree, that these fraternities also have non-members living in their houses, so that any of your... so that the plaintiffs here could have asked to live there as a non-member, and they never did. Is that correct? Your Honor, there may theoretically be a house that had a non-member in it, but... Well, just to answer my question, isn't it correct that they never asked to live in the houses? They never... well, we do not allege the magic word, I want to live in the house. We allege all the actions that indicate I want to live in the house. And moreover, Your Honor, defendants mischaracterized the 3604A claim.  It's about making housing otherwise unavailable. That prohibits barriers that have the effect of denying equal access to housing. That's why something like insurance financing, under the federal regulations, insurance for housing, if you're denied insurance for housing, that violates, on a discriminatory basis, that violates 3604A. You don't have to apply for housing after you were denied insurance. Your Honor, the denial of the insurance under the federal regulations isn't of itself a violation of 3604A. All barriers to housing that have the effect of making otherwise unavailable are violations. And here we allege the defendants gave priority to men. If you go into any apartment building or management office, and you say, I'd like housing, and they say, sure, but we give priority to men, and then you don't apply, I think you still have the Fair Housing Act claim, because that management office is not allowed to give priority to men under the Fair Housing Act. That's essentially what happened here. They wanted priority. But you don't know that they would have said that, since you never asked. We do know that they said that, because members get priority. Right, but you never know that they would have said, on the housing for non-members, we give priority and, in fact, only allow men. You don't know that, because you never asked the question. I think we do know that, because this is the normal process for housing. But also, Your Honor, this is where 3604C comes in. If you're told you can't be a member because you're a woman, then the ordinary listener, which is the standard, the ordinary listener would understand you also can't get housing at a fraternity because you're a woman. And let's face it, we're talking about fraternity housing. This is the quintessential males-only organization. Your Honor, Your Honor, at bottom in this appeal, Congress enacted the Fair Housing Act with the broad purpose of eliminating housing discrimination. Thus, the FHA has only limited exemptions, including the private club exemption, which is an affirmative defense. In effect, the Act says that if you are an organization that intentionally discriminates, you must be prepared to provide evidence that you are, in fact, a private club. A ruling in defendant's favor would drastically alter Congress' design. In effect, it would immunize from students all membership organizations and fugitive membership organizations due to threshold issues, like standing, zone of interest, proximate cause, without regard to whether they are actually private clubs subject to the exemption. If this case were to go back to the district court, but the private club exemption were treated as a gating issue, what does discovery look like to smoke out whether or not these clubs fit into that exemption? We have to determine whether or not they're open to the public. To what extent are they opening themselves on a regular basis to the public? How selective they are. That's on the U.S. v. Lansdowne Swim. Those are the factors. How much do you open yourself up to the public? How selective are you? We have to figure out just how commercial this housing is, how important housing is for the commercial success of each of these fraternity defendants. We have to figure out what we have to get discovery to prove our allegations. This is, in fact, central to the fraternity's operation. All of those factors come into play in discovery on the private club exemption. And, Your Honor, to your point on whether we've alleged this for each specific fraternity, each specific housing corporation, I would say look at paragraphs 50 to 60 of the complaint.  And if you read the complaint as a whole, in light of those allegations, I think it's very clear that each of these organizations has housing. And I think I'm confident discovery will show that. It's beyond taboo. Thank you, counsel. Your time has expired. A very interesting case. We'll reserve the session. Thank you very much.